## Jordan *vs.* Brown *et al.*

1. While generally an administrator may, in his discretion, relieve a debt, not barred in the lifetime of his intestate, from the operation of the statute of limitations, by a new promise to pay, yet, where he has filed a bill to marshal assets, and has brought the creditors with their claims before the court, he could not arbitrarily relieve certain claims of the bar of the statute, and plead it as to others. Either he will be compelled to abstain from all interference in the matter, or, if allowed to interfere, it will be upon the condition that he applies the same rule to all who have equally meritorious claims.

2. Usually the limitations applicable to a court of law also apply to a court of equity, but the latter court may also interpose an equitable bar in accordance with its established rules, whenever, from lapse of time or *laches* of the complainant, it would be inequitable to allow a party to enforce his legal rights, and may interpose to prevent the bar from attaching, when, under like circumstances, it would be inequitable to permit a defendant to shield himself by pleading it.

(a.) Corn having been furnished to an estate to sustain the live stock and persons working the land, and a note having been given by the administrator, signing as such, this was sufficient to indicate that the debt was that of the estate.

(b.) There was sufficient in this case to entitle the plaintiff in error to submit his claim to a jury.

3. Without the consent of the different claimants, a bill to marshal assets and distribute an estate could not be finally tried and the rights of the various claimants determined, until it should first be ascertained what fund there was for distribution.

March 4, 1884.

Administrators and Executors. Equity. Statute of Limitations. Debtor and Creditor. Before Judge Bower. Dougherty Superior Court. October Term, 1883.

Reported in the decision.

W. E. SMITH, for plaintiff in error.

D. A. VASON; R. HOBBS; D. H. POPE; HAMILTON Mc-WHORTER; G. J. WRIGHT, for defendants

HALL, Justice.

This proceeding, in some of its aspects quite novel and somewhat anomalous, presents for determination various questions. The primary object of the bill was to arrest the levy of an execution upon the estate of George O. Dawson, deceased, and to prevent the sacrifice of such estate by a sale under said levy, on account of its being involved in litigation, commenced in Dawson's life, and which, if it terminated unfavorable to him, might absorb the greater portion, if not the whole, of his estate. An injunction was prayed and ordered, not only against the levying creditor, but against all others who, so far as known, were made parties to the bill. The bill was filed in 1878, and the injunction ordered as prayed. It is charged that complainant will be unable to determine, until the litigation is disposed of, which involves the title to the larger portion of the estate in his hands to be administered, what title or interest, if any, the estate has in and to the property in litigation, and what defences he should make to the suits instituted, or which may be instituted by creditors, in order to protect himself as such administrator and do justice as to the creditors, etc. He prays that the creditors may appear before the court and present and establish their several claims, that the amounts due to each of them, together with their dignities and respective priorities, may be ascertained and decreed, and that each of them may be restrained from instituting or prosecuting suits at law against complainant; that, after the litigation involving the property in hand to be administered is terminated, the court may decree the sale of the interest thereby ascertained to belong to the estate, and order the application of the proceeds of the sale among the persons entitled

thereto. Notwithstanding the pendency of the suit involv·
ing the title to the estate, and the impossibility of de·
creeing the sale of the interest represented by complain·
ant thherein on that account, the court, at its October term
1883, by the consent of plaintiff and defendant, tried the
case and made a final decree therein, distributing the funds
when they should come to hand, according to an arrange-
ment agreed upon by the administrators and all the cred-
tors before the court, except the plaintiff in error, who
was no party to the arrangement.

Dawson, the testator, died in 1865. Whether the execu
tor named in his will ever qualified does not appear.
We are entirely ignorant of the contents of the will, or
when the same was proved, as it does not appear to have
been before the court below, and there is no copy of it in
the record. All we know of any representation of the
estate is Seabrook's qualification as administrator with the
will annexed, in June, 1866, and the complainant's qual-
ification as administrator *de bonis non* with the will an-
nexed. It is evident that every claim in this record, except
Outy's and perhaps that of Jordan, the plaintiff in error,
was barred by the statute when this bill was filed. The
claims of each of these creditors were acknowledged and
taken out of the statute, except as above stated, at or im,
mediately before the hearing, by a written acknowledg-
ment of the complainant and a promise to pay them, in
which acknowledgment, however, the complainant took
good care to stipulate that he should incur no personal
responsibility thereby No plea of the statute was set up
to the claim of the plaintiff in error until it was presented
on the hearing, when that, with other pleas, were filed,
over his objection. He asked that complainant be comd
pelled to file a similar plea to the claims of others, and
upon his refusal to do so, he offered to do it himself; both
requests were refused by the court, and upon demurrer,
his claim was rejected, and the decree was entered, by
arrangement of the others, disposing of the estate, when

it should come to hand, among them, after paying expenses of administration, counsel fees, etc.

1. It is certainly true that an administrator may, in his discretion, relieve a debt, not barred in the lifetime of his intestate, from the operation of the statute of limitations, by a new promise to pay; in such cases, however, he does so subject to responsibility to the distributees, who may show by proof that the claim against the estate was in reality unjust. Code, §2542. How far an executor or administrator with the will annexed may exercise such discretion, or whether he can exercise it at all, is another question, upon which it is not now necessary to pass.

But this does not meet the case at bar. Can he exercise this discretion, after coming into a court of equity upon a bill to marshal assets and pay out the same among the various creditors, especially when the estate is hopelessly insolvent? We are decidedly of opinion that he cannot. He asks the aid of the court for his own relief, and asking equity, he might do equity, and give effect to all equitable rights of the other parties respecting the subject-matter of the suit. Code, §3084. As to the contest brought about among the creditors, he is a stake-holder and trustee for all alike. Wherever legal difficulties arise in the distribution of assets in payment of debts, or where, from any circumstances, the ordinary process of law would interfere with the due administration, without fault on the part of the representative of the estate, a bill to marshal the assets will be maintained at his instance (Code, §3146); and in marshalling assets, the court must look to the equities of creditors (*Ib.*, §3147,) for that court always seeks to do complete justice, and having the parties rightfully before it, it should proceed to give full relief to all of them in reference to the subject-matter. *Ib.*, §3085. Equity delights in equality, and even in cases of mixed assets, partly legal and partly equitable, will so apply this rule as to produce general equality among those having claims upon the several kinds of assets. *Ib.*, §§3143, 3090. So we reach the conclusion, under the facts of this case, that the

complainant should either have been compelled to abstain from all interference in the matter, or, if allowed to inter- fere, it should have been upon the condition that he ap- plied the same rule to all appearing to have equally mer- itorious claims. It will not do, after the court is in pos- session of the estate for distribution among creditors, to make their rights dependent upon the arbitrary or capri- cious exercise of the administrator's discretion; this would be to substitute his will for the law; he cannot thereby alter the status which the parties sustained to each other at the commencement of the suit, and after he had aban- doned all control of the matter and submitted it to the direction of the court.

2. But we are of opinion that there was enough set up by the pleadings and proof, as to the claim of the plaintiff in error, to entitle him to carry it to a jury, in reference to the questions made as to his right to payment. Early in the year 1866, he furnished corn to this estate to sustain the live stock and persons working the land in question, and enable it to carry on its planting operations. It does· not appear, at the time the supplies were furnished, that there was any legal representative of the estate, but it is· shown that Seabrook was then in possession, and that he was afterwards qualified as administrator. Before he was qualified, he signed a note acknowledging indebtedness for the same; to his name he added the words, "adminis- trator on the estate of Geo. O. Dawson." Suit was brought· on the note against Seabrook, administrator, as aforesaid, and judgment rendered in accordance; but there was in it nothing authorizing it to be levied upon the property of Dawson in his hands to be administered. On this judg- ment execution issued, and upon that execution there was, in 1875, an entry of *nulla bona.* If these proceedings can be used as evidence to charge the estate of Dawson, it is admitted that this claim is not barred by the statute of limitations, but if this be the personal debt of Seabrook, and the plaintiff in error has elected to treat him, and not·

the estate, as his debtor, then it is insisted he is bound by that election, and the case is within the bar of the statute.

That Seabrook signed the note, with the addition to his signature of "administrator of Geo. O. Dawson," sufficiently indicates that it was the debt ,of the estate (*Rawlings vs. Robson,* 70 *Ga.,* 595), and that the plaintiff in error so treated it. At all events, this was a fact from which, with other circumstances, a jury would have been authorized to draw that conclusion. In making this purchase from the plaintiff in error, Seabrook unquestionably acted as the agent of Dawson's estate, and in that capacity gave the note, and suit was commenced thereon, and judgment rendered against him in the same capacity, and in that way the debt was kept alive, until within less than three years of the filing of this bill. The judgment is not now dormant, and could not become so, by reason of the injunction obtained by complainant restraining its enforcement. In *Wylly vs. Collins,* 9 *Ga. R.,* 224 (15 head-note) 242, this court held that the statute does not begin to run in favor of a trust estate until a return of *nulla bona* against the agent, or his insolvency be legally ascertained; that it is not available where the legal remedy against him has not been barred. This ruling, with many others following in the same line, was made prior to the passage of the statute making limitations of action applicable alike to suits at law and in equity, Code, §2924; that prior thereto these latter courts were not positively bound by such enactment, but acted in analogy thereto. But by the latter clause of this section, these courts may, in addition, interpose an equitable bar in accordance with their established rules, whenever, from the lapse of time or *laches* of the complainant, it would be inequitable to allow a party to enforce his legal right; *e converso,* why should they not interpose to prevent the bar from attaching, where, under like circumstances, it would be inequitable to permit a defendant to shield himself by pleading it? There is no difference in principle in these several instances. 1

Pomeroy's Eq, §§418, 419, and notes with citations; 2 Story's Eq. Jur., §§1521, and notes 7, 2. We are satisfied that the facts and circumstances out of which this claim. grew, together with the efforts to collect it, should be more closely scanned and carefully investigated than seems to have been done on this trial, and that there should be another hearing.

3. But for the consent of the plaintiff in error to this trial, at the time it was had, we should have no difficulty in holding it premature, inasmuch as it was brought on before it was ascertained whether there would be any fund to be distributed among the creditors. How far this consent will be binding hereafter, it is needless to inquire, but we leave him to determine for himself whether it can or ought to be withdrawn.

Judgment reversed.